RIO MIMBRES IRR. CO. v. ERVEIN, COM'R.

SYLLABUS BY THE COURT.

1.   Appellant contracted to construct dams and reservoirs to irrigate 25,000 acres of state lands, "or so much thereof, or as much more, as there may be water to irrigate, the amount to be determined by the measurements and estimates and by the territorial engineer." In the contract it was provided that certain lands therein described, amounting to over 14,000 acres, might be first supplied, and thereafter that only territorial lands should be supplied.   The 14,000 acres of land mentioned were held in private owership and had prior water rights upon the supply to those of the territory.   Appellant gave bond in the sum of $25,000 to secure the building of the reservoir.   The state engineer had ascertained and reported that there was a total water supply for only 9,000 acres of land.   It is held that under these circumstances there was no obligation upon the part of the appellant to build a reservoir, and the judgment forfeiting the bond and awarding $25,000 damages for breach thereof against appellant was erroneaus.                                                      P. 196

2.   Appellant had a contract with the state land commissioner to construct wells to irrigate certain lands, which wells were constructed.   It brought suit for specific performance of

the contract for the sale of the lands by the land commissioner to such purchasers as it had and should produce. The court awarded the relief prayed for for about 9,000 acres of land. Counsel for appellant asked a finding that appellant was entitled to be awarded an allotment of about 5,000 acres, much less than was actually awarded, and failed to make claim that appellant had a right to more. land than was awarded, and, in fact, admits in his brief here that the object of appellant's action had been substantially accomplished. Under such circumstances appellant cannot be heard to complain of the court's action in failing to award more land to appellant. P. 197

Appeal from District Court, Santa Fe County; Colin Neblett, Judge.

Action for specific performance by the Rio Mimbres Irrigation Company against Robert P. Ervein, Commissioner, with cross-complaint by defendant. Judgment for plaintiff in part, and for defendant upon its cross-complaint and plaintiff appeals. Judgment for defendant reversed, and otherwise affirmed, and cause remanded to district court, with instructions.

McFie, Edwards & McFie, of Santa Fe, for appellant. Hoag & Ullman, of Chicago, Ill., of counsel.

A cross complaint is not a defense to complaint.

Sec. 4115 Code 19915; 4116, Code 1915; Agua Pura Co. v. Mayor, 10 N. M. 6; La Mesa Com. Ditch v. Appelzoeller, 140 Pac. 1055; 1 Sutherland Code Pl. Secs. 655, 654; Stand. Enc. Pro., 296.

Whether or not contract is divisible must be determined from ascertained intention of parties.

Wooten v. Walters, 15 S. E. 734; City of Tecumseh v. Burns, 120 Pac. 270; Sanitary Dist. of Chicago vs. McMahon & Montgomery Co., 110 Ill. App. 510; Sterling vs. Gregory, 149 Cal. 117, 85 Pac. 305.

Frank W. Clancy, Attorney General, for appellee.

OPINION OF THE COURT.

PARKER, J.   The territory had located and selected under an act of Congress 106,009.78 acres of land in the Mimbres Valley in Grant and Luna counties, and on October 1, 1908, the territory through its then commissioner of public lands entered into a contract with the plaintiff's assignor to sell and convey in tracts of specified sizes to applicants therefor, who should produce a contract with plaintiff's assignor for a water right sufficient to irrigate the same.   Plaintiff's assignor agreed to construct and maintain an irrigation plant by means of dams, reservoirs, and canals for the irrigation of said land, according to plans theretofore approved by the territorial engineer and to complete such works within five years from the date of the contract.   On December 5, 1911, it had been ascertained that there was much question as to the water supply for such irrigation enterprise, and the plaintiff as the assignee of the original contract and the territory through defendant as its land commissioner on said day entered into a contract amendatory of the contract of October 1, 1908, in several particulars.   It provided that plaintiff should construct its works to irrigate 25,000 acres of said land, or so much thereof as water supply should suffice for irrigation by means of dams, diversion dams, reservoirs and canals, and in paragraph 2 it provided that plaintiff should give a bond in the sum of $25,000, conditioned for the performance of its undertaking by October 1, 1914, which bond, in case of failure to perform on the part of the plaintiff, should be forfeited and the proceeds credited to the income fund of said lands.   Plaintiff also agreed to sink wells sufficient to irrigate at least 5,000 acres of said lands by December 10, 1913, and all other lands susceptible of irrigation by wells and pumps, within five years from the date of the amendatory contract.   Plaintiff also agreed, in paragraph 14 of the amendatory contract, to give its other bond in the sum of $25,000, conditioned for the faithful performance of its undertaking under said agreement.   Provision was made for forfeiture of plaintiff's rights in case of failure to per-

form. In paragraph 19 of the amendatory contract it is provided:

"At the close of October 1, 1914, if the party of the second part, by reason herein stated, shall have forfeited its rights under this amendment, it shall only be required to pay the bond of $25,0000, specified in paragraph 2, and the bond of $25,000, specified in paragraph 14, shall be canceled and returned to the party of the second part without cost, and the party of the second part shall be allowed to dispose of such lands as it has furnished water for as specified in the original contract and this amendment, but shall forfeit all right to develop or furnish water to any additional lands than those having equipment placed upon them."

Plaintiff failed to perform in regard to the construction of dams, reservoirs, etc., for the irrigation of the 25,000 acres, and did absolutely nothing along that line. It did reclaim about 5,000 acres by means of wells. Plaintiff found purchasers for some of the lands irrigated by wells and applied to defendant for deeds to the same, which were refused. Thereupon plaintiff brought this action for specific performance of the contract. Plaintiff sets up the original and amendatory contracts, and alleges, by way of confession and avoidance of the failure to construct the dams, reservoirs, etc., that it had been ascertained by the state engineer and defendant that there is no available water for irrigation in that manner and by that means, and that it has otherwise fully performed said contract; that it has made contracts with divers persons for the sale of water rights, and has found purchasers for certain other lands watered thereby, and has requested defendant to convey, which he has refused to do, and prays for specific performance of the contract, and $2,000 damages.

Defendant answered, admitting the contracts; denying that it had been ascertained that there was no water for irrigation by dams and reservoirs, and alleging that the state engineer had ascertained that there was water for 9,000 acres; admitting that he had received through plaintiff one application to purchase lands, which had been refused because plaintiff had failed and refused to perform; and denying that plaintiff had been damaged by defendant's action.

Defendant filed a cross-complaint, alleging the execution of the contract, pointing out that by the terms of the contract the territorial engineer was to ascertain the amount of water available for irrigation by reservoirs and canals, and that his determination was final and binding on the parties, and alleging that he had so ascertained and had reported a water supply for 9,000 acres of land, on a basis of 43,560 cubic feet of water per acre; alleging that plaintiff had wholly failed to perform the contracts in that it had wholly failed to construct the storage reservoir for the irrigation of 25,000 acres or at all, and had failed to select the land for irrigation under either the reservoir or pumping system; alleged that he had refrained from disposing of said lands to others, whereby the state had lost all revenue from said lands; that by reason of such failure of plaintiff it had forfeited all rights under said contract and the bond for $25,000 mentioned in paragraph 2. of the contract had become forfeited; and that by reason of such failure of plaintiff, cross-plaintiff had suffered damages in the sum of $27,000. He prayed that plaintiff's complaint be dismissed, that plaintiff be adjudged in default, and that said contract be forfeited, and that cross-plaintiff have judgment for $27,000 damages. A demurrer was interposed to the cross-complaint on the ground that the failure of plaintiff to construct the reservoir system did not constitute a defense to the complaint for the specific performance of that part of the contract relating to the irrigation system by means of wells and pumps. This demurrer was overruled. Plaintff answered and alleged, among other things, that all of the water shown by the territorial engineer as available at the reservoir site had been appropriated by prior appropriators.

At the trial it was stipulated that plaintiff had failed to construct any dams or reservoirs as contemplated by the contract; that plaintiff had constructed wells capable of irrigating 5,000 acres of the land; that on November 14, 1916, James A. French, state engineer, made a report to the defendant as to the water supply at the proposed dam site, showing the same to range from 3,270 acre feet

to 31,570 acre feet per annum, and had found that the water supply, after allowing for evaporation, would be sufficient to supply one acre foot of water per annum for about 9,000 acres of land.

The original contract between plaintiff's predecessor in title and the territory, in paragraph 3 thereof, makes mention of certain lands, amounting to over 14,000 acres, and provides that except for those lands and certain others therein mentioned "no part of the water supply provided for by this contract shall be disposed of for irrigation purposes, except for use upon the territorial lands" described in the contract. Two witnesses for the plaintiff testified that these lands above mentioned were all held in private ownership, and, from the examination of the records of the state land office, we have ascertained that no part of the same was ever owned by the territory or state, except a small portion selected subsequent to said contract. While these land office records are not before the court as a part of the record in this case, still they are public documents and verify the testimony for the plaintiff in this regard. The report of the state engineer to the effect that there is sufficient water to irrigate 9,000 acres of land makes no mention of these lands, nor any mention of the fact that they have water rights from the source of supply contracted about, by reason of appropriation of water prior to any rights of the parties to this controversy. Plaintiff shows by two witnesses that the owners of these lands had prior appropriators of water upon the water supply involved in this case, and, although the testimony is of a loose and unsatisfactory character, yet it was introduced without objection on the part of the state and sufficiently establishes, in the absence of a contrary showing, that the prior water rights existed. It becomes apparent, therefore, that neither the plaintiff nor the territory would have any legal right to construct a reservoir and to divert these waters from the uses of the prior appropriations and for the irrigation of state lands. In other words, it sufficiently appears that the owners of 14,000 acres of land, having water rights by appropriation prior in time to either

of the parties to this controversy, had a prior claim upon the water supply of the stream, which would more than exhaust that supply, according to the findings of the state engineer. It appears from paragraph 1 of the amended contract that the undertaking on the part of the plaintiff was to construct reservoirs and dams to irrigate 25,000 acres of territorial lands, "or so much thereof, or as much more, as there may be water to irrigate, the amount to be determined by the measurements and estimates and by the territorial engineer." The contract went no further than this.

The court found that the plaintiff had failed to perform its contracts in regard to the irrigation works by reservoirs and dams, but that it had provided wells for certain lands mentioned in the decree. The court drew the legal conclusion that plaintiff had, by reason of its failure to perform, forfeited all of its rights to those lands subject to irrigation by means of reservoirs, and had forfeited its bond provided for in section 2 of the amendatory contract, but that it had not lost its right as to the lands susceptible of irrigation by means of wells and pumps. It thereupon entered judgment restoring the first-mentioned lands to the state and awarding defendant and cross-complainant judgment for $25,000 and costs on the above-mentioned bond, and awarded specific performance as to the lands irrigable by means of wells. Plaintiff appeals.

[1] Appellant argues that there could be no recovery on the bond because the proofs showed that there was no water available for irrigation by dams and reservoirs. In this contention appellant is correct, and the court was in error in this regard. As heretofore pointed out, it was expressly contemplated in the contracts between the parties that there were over 14,00 acres of land which were not state lands, and which were not subject to the terms of the contract between the parties, in so far as the construction of dams and reservoirs for irrigation thereof was concerned. It is not expressly stated in the contracts that the lands were held in private ownership, and that it was for that reason that they were excluded; but the testimony for the

appellant shows that they were held in private ownership, and that the owners thereof had prior water rights in the water supply. It was contemplated by the contract that if the dams and reservoirs were to be built that the appellant should have the right to contract with such owners of such lands for water out of the common water supply.

In the light of all the circumstances we think the contracts are to be read as if they provided that the appellant might first contract with the owners of the 14,000 acres for water, and if any remained thereafter it should put the same upon the state lands only before contracting with any other private owners. The findings of the state engineer show that the water supply was inadequate for the 14,000 acres, leaving no water whatever for state lands. The court therefore was in error in finding that the appellant had forfeited its bond given to secure the building of the dams and reservoirs; there having been no failure to perform within the terms of the contracts.

[2] Appellant complains that the court only awarded specific performance for the conveyance of about 9.000 acres, irrigable by wells, whereas a much larger area, 30,-000 additional acres, were subject to appellant's rights in that regard, when it should have constructed additional wells, which it was proposing to do. The decree contains a recital of a stipulation between the parties that the state engineer should make tests of such wells as should be designated by appellant, and make a report for the information of the court in making its final decree as to the lands irrigable therefrom, and which, consequently, appellant could be entitled to have conveyed to purchasers upon demand, and a recital that counsel had agreed upon the lands to be covered by the wells. Counsel for appellant asked a finding that appellant be awarded an allotment of at least 5,000 acres of land to be disposed of under the terms of the contract, and failed to call the court's attention to the fact that other lands than those awarded to appellant were subject to its rights. In fact appellant's counsel admits in the brief that the object of appellant's action has been

substantially accomplished, except that it is aggrieved by the judgment for $25,000. Under such circumstances can appellant be heard to complain of the court's action? It is clear that it cannot.

For the reasons stated, the judgment of the cuort below, awarding defendant and cross-plaintiff judgment for $25,-000 upon the bond, should be reversed, and the judgment should be otherwise affirmed, and the cause remanded to the district court, with instructions to proceed in accordance herewith; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.